**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**Louis D. Brown III,** **Case No. 1:25-cv-00834**

**Plaintiff,**

**-vs-**

**JUDGE PAMELA A. BARKER**

**American Economy Insurance Company**

**Defendant.** **MEMORANDUM OPINION & ORDER**

Currently pending before the Court is Defendant American Economy Insurance Company's ("Defendant") Motion for Summary Judgment (the "Motion"). (Doc. No. 23.) Plaintiff Louis D. Brown III ("Plaintiff" or "Brown") filed an Opposition to the Motion (the "Opposition") to which Defendant filed its Reply in Support of the Motion (the "Reply").[1] (Doc. Nos. 25, 27). For the following reasons, the Motion is granted.

## I. Background

### A. Procedural History

On March 21, 2025, Plaintiff, proceeding *pro se*, filed the Complaint in the Cuyahoga County Court of Common Pleas. (Doc. No. 1-1.) Therein, he asserted claims for breach of contract, bad faith insurance practices, and violation of the Ohio Consumer Sales Practices Act. (*Id.*) On April 25, 2025, Defendant removed the action to this Court under its diversity jurisdiction. (Doc. No. 1.) On April 29, 2025, the Court referred this matter to Magistrate Judge Armstrong for pretrial supervision,

---

[1] Defendant captioned the Reply, "Reply in Support of Motion for *Partial* Summary Judgment." (Emphasis added.) However, this Court construes "partial" as a scrivener's error because in the Motion, Defendant asserts that it "is entitled to judgment in its favor on all claims against it" and in its Reply, Defendant represents that it "seeks judgment on all claims asserted against it." (Doc. No. 23, PageID# 437;Doc. No 27, PageID# 575.)

not including resolution of dispositive motions. (Doc. No. 4.) On May 2, 2025, Defendant filed its Answer to the Complaint and a Motion to Dismiss. (Doc. Nos. 5, 6.)

In its Motion to Dismiss, Defendant sought dismissal of two claims asserted by Plaintiff: (1) the breach of contract claim for Claim No. 054247731 arising from Brown's report of a loss from wind damage that allegedly occurred on July 20, 2023; and (2) Count III – Violation of Ohio Consumer Sales Practices Act. (Doc. No. 6, PageID#s 54-55.) On May 27, 2025, Plaintiff filed his brief in opposition, to which Defendant replied on June 3, 2025. (Doc. Nos. 10, 11.) On October 20, 2025, this Court issued an order granting Defendant's Motion to Dismiss. (Doc. No. 15.) As a result, only Plaintiff's breach of contract claim relating to Claim No. 058695529 (January 23, 2025) and Claim No. 057400285 (July 17, 2024) and his claim for bad faith insurance practices remain. (*Id.*)

On June 12, 2025, Judge Armstrong held a case management conference and ordered that all fact discovery be completed by November 7, 2025, and all expert discovery be completed by December 16, 2025. (Doc. No. 12.) On November 7, 2025, Defendant requested that the fact discovery deadline be extended to December 8, 2025, and Judge Armstrong granted this request. (Doc. No. 19); Non-Doc dated Dec. 1, 2025.

On January 13, 2026, Defendant filed the Motion, and Plaintiff filed the Opposition on January 26, 2026. (Doc. Nos. 23, 25.) That same day, Plaintiff also filed his Supplemental Notice and Update Regarding Pending Public Records Request in Opposition to Summary Judgment. (Doc. No. 26.) On February 9, 2026, Defendant filed the Reply. (Doc. No. 27.)

After the Motion was fully briefed, on February 13, 2026, Plaintiff filed the Motion for Leave to File Sur-Reply and Proposed Sur-Reply in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 28), Motion for Leave to Supplement the Record with Public Records and for

Extension of Time to File Same (Doc. No. 29), and the Motion for Reasonable ADA Accommodation and Request for Extension of Time to Respond to Defendant's Summary Judgment Filings (Doc. No. 30). On February 27, 2026, Defendant filed an Omnibus Memorandum in Opposition to Plaintiff's then-pending motions. (Doc. No. 31.) On April 27, 2026, Plaintiff filed the Motion to Issue Subpoenas (Doc. No. 32) (collectively with Plaintiff's then-pending motions, "Plaintiff's Motions"). On July 1, 2026, this Court issued a Memorandum Opinion and Order denying Plaintiff's Motions on the grounds that (1) Plaintiff was not entitled to file a sur-reply because the Reply did not present any new arguments; (2) Plaintiff failed to show good cause for re-opening and extending the discovery deadline; and (3) Plaintiff was not entitled to a blanket extension on future deadlines. (Doc. No. 33.) Thus, in ruling upon the Motion, this Court considers only the arguments presented in the Motion, the Opposition, and the Reply as well as any exhibits attached thereto.

**B. Facts**

**1. The Policy**

Defendant issued a homeowner's policy, number OK7319825 to Brown with effective dates of June 1, 2023 to June 1, 2024, that was renewed for another year from June 1, 2024 to June 1, 2025 ("the Policy"). (Doc. No. 23-1, PageID# 439; Doc. No. 23-3, PageID#s 443, 445.)) The Policy identifies 2184 E. 82nd Street, Cleveland, Ohio (the "Property") as the "insured location" which is defined to mean "the residence premises." (Doc. No. 23-3, PageID#s 445, 462.) In the Policy, the term "you" is defined to mean or refer to "the 'named insured' shown in your Policy Declarations" or Brown. (Doc. No. 23-3, PageID# 461.)

The Policy provides coverage for "[t]he dwelling on the ***residence premises***" and defines the "***residence premises***" in pertinent part as:

> 1. the one, two, three or four family dwelling, used principally as a private residence;
> 2. other structures and grounds; or
> 3. that part of any other building;
>
> where you reside and which is shown in your Policy Declarations.

(*Id.*, PageID#s 463-64.)

The Policy also provides in pertinent part as follows:

> **BUILDING PROPERTY WE DO NOT COVER**
>
> We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> ***
>
> 5. Continuous or repeated seepage or leakage of water or stream, or the presence or condensation of humidity, moisture or vapor which occurs over a period of more than 14 days.
>
> 6. a. Wear and tear, marring, scratching, deterioration;
> b. inherent defect, mechanical breakdown;

(*Id.*, PageID#s 464-65.)

**2. The Claims**

This action involves two insurance claims made by Brown under the Policy. On July 17, 2024, Brown reported a loss to the Property that Defendant assigned Claim Number 057400285, ("Claim 1") and on January 23, 2025, Brown reported a second loss to the Property that Defendant assigned Claim Number 058695529 ("Claim 2"). (Doc. No 1-1, ¶ 6.)

As to Claim 1, on July 17, 2024, Defendant received a claim from Plaintiff reporting water

damage allegedly caused by an HVAC/plumbing failure. (Doc. No. 23-1,[2] PageID# 439.) Specifically, Plaintiff reported that "a sudden pipe break from the upper floor bathroom area ha[d] created water damage to the insured upper bathroom floor and the main floor ceiling drywall, sheetrock, walls and flooring." (Doc. No. 23-4, PageID# 496.) Two days after the July 17, 2024 loss was reported, or on July 19, 2024, Defendant retained Paul Davis Restoration to inspect the Property and Paul Davis contacted Brown and conducted the inspection that same day. (Doc. No. 23-4, PageID# 496.) In his report regarding his inspection of the Property, Paul Davis identified evidence of long-term seepage, specifically the toilet drain was backed up and the source bathroom had no flooring, rotted plywood, and rot on the framing of the ceiling below and there was approximately 20 square feet of old on the framing and shiplap boards. (Doc. No. 23-1, PageID# 439;[3] Doc. No. 23-4, PageID# 498.)

By letter dated July 25, 2024, Defendant advised Brown that it was denying Claim 1. In relevant part the letter reads as follows:

> Our first notice of loss was on 07/19/2024.[4] It was reported that a sudden pipe break

---

[2] Doc. No. 23-1 is a Declaration of Bradley Meredith, employed by Defendant as a Senior Field Claims Resolution Specialist II who, in the ordinary course of his duties, has access to Defendant's records relating to the Policy and to the claims Brown submitted under the Policy, which are records created and maintained in the regular course of Defendant's business. (Doc. No. 23-1, PageID# 439.) Mr. Meredith averred that having reviewed these records he is competent to testify regarding the matters stated within his Declaration. (*Id.*) According to Mr. Bradley, as to Claim 1, Defendant "fully investigated Plaintiff's claim, including retaining a qualified, independent expert to inspect the Property and provide written findings regarding the cause and extent of the reported damage." (Doc. No. 23-2, PageID# 440, ¶ 9.) Mr. Bradley also averred that "[a]t no point did Plaintiff submit any expert report, documentation, or other evidence contradicting the findings of American Economy's retained expert, nor any evidence showing that the claim loss was caused by a sudden or accidental event covered by the Policy." (*Id.*, PageID # 440, ¶ 10.)

[3] Mr. Bradley averred that the Paul Davis report was attached as "Ex. C" (docketed as Doc. No. 23-4), but did not aver that it was a true and accurate copy of the Paul Davis report. Moreover, Defendant did not provide a declaration or competent evidence from Paul Davis to attempt to establish that he is an "expert" and Defendant did not provide competent evidence in the form of a declaration or sworn testimony from Paul Davis concerning his inspection and observations and conclusions, even as a lay witness.

[4] Although the denial letter indicates that Defendant's "first notice of loss was on 07/19/2024," the Declaration of Mr. Meredith indicates the first notice of loss was July 17, 2024. (Doc. No. 23-1, PageID# 439, ¶ 5).

> from the upper floor bathroom area has created water damage to the insured upper bathroom floor and the main floor ceiling drywall, sheetrock, walls and flooring.
>
> Our review of your claim revealed the following relevant information: You are renting out the house as tenants occupy the home. The water that is leaking is coming from the second floor is due to a worn out pipe, or faulty, inadequate, or defective maintenance. The water damages have lead to rot and deterioration of the framing due to continuous or repeated leaking. Your policy does not afford coverage for the claim due to tenants occupying the home and continuous and/or repeated seepage, wear and tear, rot, deterioration, and faulty, inadequate, or defective maintenance or repair all being excluded.
>
> ***
>
> Based upon the information available to date, the grounds for our denial of coverage under the Policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:
>
> Your policy does not afford coverage for the claim due to tenants occupying the home and continuous and/or repeated seepage, wear and tear, rot, deterioration, and faulty, inadequate, or defective maintenance or repair all being excluded.
>
> Based on these grounds, no insurance coverage is available to you for the claim. While we sought to identify and address all relevant insurance coverage considerations above, these specific considerations are not intended and should not be understood as a waiver of any other right or basis we may have to deny coverage, and we reserve all rights in this regard.

(Doc. No. 23-5, PageID#s 508, 510.)

As to Claim 2, Brown reported "that sewer [was] backing up through the drain in the floor causing damage to flooring, lower drywall in multiple rooms and some furniture damage." (Doc. No. 23-7, PageID# 532.) Two days after Brown reported the loss or on January 29, 2025, Defendant retained Stanley Steemer to inspect the reported loss. (Doc. No. 23-2,[5] PageID# 441.) Stanley

[5] Doc. No. 23-2 is a Declaration of Debbie Millet, employed by Defendant as a Claims Resolution Specialist who, in the ordinary course of her duties, has access to Defendant's records relating to the Policy and to the claims Brown submitted under the Policy, which are records created and maintained in the regular course of Defendant's business. (Doc. No. 23-2, PageID# 441.) Ms. Millet averred that she reviewed theses records and is competent to testify regarding the matters stated within her Declaration. (*Id.*) According to Ms. Millet, as to Claim 2, Defendant "fully investigated Plaintiff's claim, including retaining a qualified, independent expert to inspect the Property and provide written findings regarding

Steemer then completed the inspection and submitted a mitigation report to Defendant. (*Id.*; Doc. No. 23-6.)[6] Defendant then requested additional pictures from Brown which were received by Defendant.[7] (Doc. No. 23-2, PageID# 441.) According to Ms. Millet, the report and photographs provided to Defendant by Brown demonstrated to Defendant that the observed conditions were the result of long-term leakage, not a sudden, accidental sewer-backup event. (*Id.*, PageID#s 441-42.) According to Defendant, on February 12, 2025, Defendant issued a written denial of Claim 2 to Brown. (*Id.*, PageID# 442.) The denial letter reads in relevant part as follows:

> Our first notice of loss was on 01/27/2025. It was reported that sewer is backing up through the drain in the floor causing damage to flooring, lower drywall in multiple rooms and some furniture damage.
>
> Our review of your claim revealed the following relevant information: Based on our water mitigation company inspection of your damages and the photos received show long term damages.
>
> ***
>
> The Policy is incorporated by reference into this letter in its entirety. Although we have attempted to include all of the policy provisions that we believe are pertinent to this matter, the provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

---

the cause and extent of the reported damage." (Doc. No. 23-2, PageID# 442, ¶ 10.) Ms. Millet also averred that "[a]t no point did Plaintiff submit any expert report, documentation, or other evidence contradicting the findings of American Economy's retained expert, nor any evidence showing that the claim loss was caused by a sudden or accidental event covered by the Policy." (*Id.*, PageID# 442, ¶ 11.)

[6] Ms. Millet averred that the mitigation report submitted by Stanley Steemer was attached as "Exhibit F" (docketed as Doc. No. 23-6), but did not aver that it was a true and accurate copy of the mitigation report prepared by Stanley Steemer. Moreover, and more importantly, Defendant did not provide any information or declaration from anyone from Stanley Steemer to attempt to qualify Stanley Steemer as a "qualified, independent expert" or to establish any "expert" conclusions concerning the inspection. Indeed, Defendant has not submitted any competent evidence in the form of sworn testimony from a representative of Stanley Steemer setting forth the observations, conclusions and/or any opinions associated with its inspection of the insured location, even as a lay witness.

[7] Defendant did not attempt to introduce or introduce as evidence photographs of the residence premises allegedly taken by Brown. The only photographs submitted are included in the Stanley Steemer report docketed as Doc. No. 23-6.

> ***
>
> Based upon the information available to date, the grounds for our denial of coverage under the Policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:
>
> The policy does not provide coverage for Continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of more than 14 days. Because the damage was caused by a long-term leak, you have no coverage for the claim.
>
> Based on these grounds, no insurance coverage is available to you for the claim. While we sought to identify and address all relevant insurance coverage considerations above, these specific considerations are not intended and should not be understood as a waiver of any other right or basis we may have to deny coverage, and we reserve all rights in this regard.

(Doc. No. 23-7, PageID#s 532-33.)

**3. Plaintiff's Non-Residency at the Property**

Plaintiff has not continuously resided at the Property since January 2022. (Doc. No. 23-11, PageID# 553.) Rather, Plaintiff resided at 2234 E. 82nd Street. (*Id.*) He received mail at 2234 E. 82nd Street and had an ownership interest there. (*Id.*) Despite representing to Defendant that he lived at the Property during the relevant coverage period, tenants occupied the Property. (*Id.*) Plaintiff collected rent from those tenants in July 2024 and in January 2025, the months that he reported the losses occurred to the Property. (*Id.*) Plaintiff admitted these facts by failing to respond to Defendant's request for admissions.[8]

[8] Federal Rule of Civil Procedure 36(a)(3) provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." On November 12, 2025, Defendant served upon Brown eight Requests for Admission, specifically: 1. Admit that You have not continuously resided at 2184 E. 82nd Street since January 2022; 2. Admit that You have resided at 2234 E. 82nd Street since Aprill 2022; 3. Admit that tenants have occupied 2184 E. 82nd Street since April 2022; 4. Admit that You collected rent from tenants at 2184 E. 82nd Street in July 2024; 5. Admit that you collected rent from tenants at 2184 E. 82nd Street in January 2025; 6. Admit that You represented to your insurer that You lived at 2184 E. 82nd Street at the time of the Claims; 7. Admit that You have received mail at 2234 E. 82nd Street; and 8. Admit that You have an ownership interest in 2234 E. 82nd Street. (Doc. No. 23-11, PageID#s 553-54.) Plaintiff did not respond to Defendant's Requests for Admission, and thus these facts are admitted under Rule 36. (Doc. No. 23,

Plaintiff's sister, Isabel Carter, testified that Plaintiff had not lived at the Property since April 2022 because he had moved into her home at 2234 E. 82nd Street and rented the Property to tenants. (Carter Dep. (Doc. No. 23-8) (hereinafter "Carter Dep."), pgs. 18, 19.) Furthermore, in an action brought in the Cuyahoga County Court of Common Pleas, Plaintiff sought to enjoin his sister from evicting him from the 2234 E. 82nd Street house, arguing that an eviction would leave him "homeless." (Doc. No. 23-10, PageID# 544.). As plaintiff has admitted, he did not reside at that Property during the relevant coverage periods.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there

PageID# 430); *see McGuire v. Shipping Express Bus. Ctr., LLC*, 2009 WL 10679165, at *1 (S.D. Ohio Nov. 13, 2009) (finding on summary judgment that facts were admitted by a *pro se* defendant and an unrepresented LLC defendant where they failed to respond to the plaintiff's requests for admissions.)

is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

"It is well-settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). For example, "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley*, 20 F.3d at 225-26. In addition, "affidavits used for summary judgment purposes [must] be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify." *Id.* When sustaining an objection, however, "the Court should use a scalpel, not a butcher knife" and excise only those portions that lack a proper foundation. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009). *See also Antunes v. Gerdau MacSteel, Inc.*, 2023 WL 3479401 at *1-2 (6th Cir. May 16, 2023); *Johnson v. Donahoe*, 642 Fed. App'x. 599, 602 (6th Cir. 2016); *Combs v. WalMart*, 2024 WL 555913 at * 3 (S.D. Ohio Feb. 12, 2024.)

Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). After such an objection is properly raised, the burden is placed on the proponent of the supporting material to demonstrate that the material is admissible as presented or explain how it could be presented in a

form that would be admissible. *See*, *e.g.*, *Mangum v. Repp*, 674 Fed. App'x. 531, 536-37 (6th Cir. 2917) (citing Fed. R. Civ. P. 56(c) (2010 Advisory Committee Notes)). *See also Riveredge Dentistry Partnership*, 2024 WL 639689 at * 6. In evaluating an objection under Rule 56(c)(2), the Court "should disregard [inadmissible evidence] rather than striking it from the record." *See Weisblat v. John Carroll University*, 2024 WL 4172597 at *5 (N.D. Ohio Sept. 12, 2024).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems*., 593 F. App'x at 508–09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc*., 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## III. Analysis

Defendant asserts that it is entitled to judgment in its favor and against Plaintiff on Brown's breach of contract and bad faith claims for the following reasons. First, Defendant contends that Plaintiff bears the burden to establish the essential elements of his breach of contract and bad faith claims; that at the summary judgment stage Brown cannot rely on the bare allegations of his Complaint; that Plaintiff has produced no evidence whatsoever to support his claims; and the record is devoid of any admissible proof supporting the existence of coverage or any misconduct by American Economy. (Doc. No. 23, PageID#s 432-33.) Second, Defendant argues that Claim 1 and Claim 2 are not covered because the Policy unambiguously excludes losses caused by long-term seepage, deterioration, and faulty maintenance. (*Id*., PageID# 434.) Third, Defendant argues that because Brown did not reside at the Property at the time of Claim 1 and Claim 2, the Policy would

not provide coverage for these Claims even if the damages were otherwise covered. (*Id.*) Fourth, Defendant maintains that Plaintiff does not have a viable claim for bad faith because it did not deny Brown's claims in an arbitrary and capricious manner but had reasonable justification for its refusal to pay the claims. According to Defendant, it fully investigated each of Brown's claims and retained qualified experts to inspect every reported loss and provide professional opinions regarding their causes. (*Id.*) And Plaintiff never submitted any report or documentation contradicting the information supplied by Defendant's inspectors and its application of the policy language to the facts as Defendant determined them to be through the inspections of the Property.

Brown offers only the following in opposition to Defendant's arguments. "Plaintiff experienced a sudden sewer backup"; "[Defendant] relied on a mitigation vendor without forensic testing"; and "Plaintiff disputes [Defendant's] characterization of the loss as long-term seepage." (Doc. No. 25, PageID# 562.) Brown asserts that "[c]ausation is disputed and must be decided by a jury." (*Id.*) Brown contends that "Debbie Millet lacks personal knowledge and offers improper conclusions." (*Id.*) Brown argues that "Stanley Steemer is not a qualified causation expert" and that "[p]olicy exclusions are strictly construed against the insurer." (*Id.*) Brown asserts that he "was not required to submit an expert at this stage" and that "Rule 56(d) requires denial or deferral due to incomplete discovery."[9] (*Id.*)

In the Reply, Defendant reiterates its position that Plaintiff's claims lack evidentiary support and addresses the arguments that Plaintiff raises in the Opposition. *See* (Doc. No. 27.) As to Plaintiff's argument that "causation is disputed," Defendant points out that Plaintiff offers no evidence to back up its claim that the damage was caused by "a sudden sewer backup" and "does not

[9] This Court rejected this argument in its Memorandum Opinion and Order denying Plaintiff's Motions, and it will not repeat that analysis here. *See* (Doc. No. 33, PageID#s 617-20.)

challenge the findings of the Paul Davis or Stanley Steemer reports, both of which documented clear signs of long-term leakage, rot, deterioration, and mold—not a sudden accidental event." (*Id.*, PageID# 576.) Specifically, Defendant argues that since Plaintiff's Opposition "does not address or dispute any aspect of the claim involving [Claim 1]" Plaintiff has waived any opposition. (*Id.*) Defendant also maintains that it is entitled to rely on Debbie Millet's Declaration as well as inspections from qualified professionals, and Plaintiff "offers no evidence that these reports were inaccurate, incomplete, or prepared by unqualified individuals." (*Id.*) Defendant points out that Plaintiff failed to address either Policy exclusion, and thus forfeited any opposition Defendant's denial of coverage. (*Id.*, PageID# 577.) Finally, as to Plaintiff's bad faith claim, Defendant argues that its denial of Claim 1 and Claim 2 was reasonably justified and that the Opposition "contains no analysis of the bad-faith standard, no discussion of the 'reasonable justification' test, and no identification of any arbitrary conduct by the insurer." (*Id.*, PageID# 578.) For these reasons, Defendant asks this Court to grant summary judgment as to both counts. The Court will address these arguments in turn below.

### A. Count I: Breach of Contract

#### 1. Defendant has not demonstrated by competent evidence that the Property losses that are the subject of Claim 1 and Claim 2 were caused by long term seepage.

In the Motion, Defendant argues that both of Plaintiff's claims were denied because they were excluded from coverage under the Policy as the reported damage was a result of long-term seepage. (Doc. No. 23, PageID# 434.) The Policy excludes coverage for "[c]ontinuous or repeated seepage or leakage of water or stream, or the presence or condensation of humidity, moisture or vapor which occurs over a period of more than 14 days," "[w]ear and tear, marring, scratching, deterioration," and

"inherent defect, mechanical breakdown." (Doc. No. 23-3, PageID# 465.)

As to Claim 1, Plaintiff reported that "a sudden pipe break from the upper floor bathroom area ha[d] created water damage to the insured upper bathroom floor and the main floor ceiling drywall, sheetrock, walls and flooring." (Doc. No. 23-4, PageID# 496.) But according to Defendant, Paul Davis's inspection indicated that the damage was caused by "evidence of long term seepage." (*Id.*, PageID# 497.) The inspection completed by Paul Davis and documented in his report revealed that the toilet drain was backed up and the source bathroom had no flooring, rotted plywood, and rot on the framing of the ceiling below; and there were approximately 20 square feet of mold on the framing and shiplap boards. (*Id.*, PageID# 498.) Thus, Defendant denied the claim finding the damage was excluded under the Policy.[10] (Doc. No. 23-5, PageID#s 508-09.) As to Claim 2, it was reported "that sewer [was] backing up through the drain in the floor causing damage to flooring, lower drywall in multiple rooms and some furniture damage." (Doc. No. 23-7, PageID# 532.) According to Defendant, Stanley Steemer's investigation revealed to it "that the observed conditions were the result of long-term leakage, not a sudden, accidental sewer-backup event." (Millet Decl., ¶¶ 6-8.) Thus, Defendant denied the claim finding the damage was excluded under the Policy.

Under Ohio law, "[a]n insurance policy is a contract whose interpretation is a matter of law." *Sharonville v. Am. Employers Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006) (citing *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)). A court "examine[s] the insurance contract as a whole and presume[s] that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). "Simply because a term in a contract is not defined does not mean that the policy is ambiguous." *Penton Media, Inc. v. Affiliated*

[10] Defendant also denied Claim 1 because Brown was not residing at the Property; he was renting out the house as tenants occupied the home. (Doc. No. 23-5, PageID# 508.)

*Fm Ins. Co*., 2005 WL 8171363, at *6 (N.D. Ohio Sept. 30, 2005) (citing *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999)). Rather, a court must "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Westfield Ins. Co*., 797 N.E.2d at 1261. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id*. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Id*.[11]

Plaintiff is "obligated at the summary judgment phase to 'identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial.'" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (quoting *Amini v. Oberlin Coll.,* 440 F.3d 350, 357 (6th Cir. 2006) (citations omitted)). "Indeed, Federal Rule of Civil Procedure 56(e)(2) requires that '[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.'" *Id*. (citing *United States v. Ninety Three Firearms,* 330 F.3d 414, 427–28 (6th Cir. 2003). Plaintiff's "status as a pro se litigant does not alter his duty on a summary judgment motion" *Id*.

Here, Plaintiff does not argue that the Policy exclusion was invalid, but he argues that the

[11] On the other hand, if a contract is ambiguous, "a court may consider extrinsic evidence to ascertain the parties' intent." *Id.* A court may not "alter a lawful contract by imputing an intent contrary to that expressed by the parties." *Id*. at 1261-62. In the insurance context, "[i]f provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'" *Sharonville*, 846 N.E.2d at 836 (quoting *King v. Nationwide Ins. Co*., 519 N.E.2d 1380, syllabus (Ohio 1988)). "Additionally, 'an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded.'" *Id.* (quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd*. 597 N.E.2d 1096, 1102 (Ohio 1992)). Here, Plaintiff maintains that "[p]olicy exclusions are strictly construed against the insurer," but he does not argue that the Policy is ambiguous. (Doc. No. 25, PageID# 562.) Thus, this Court rejects this argument.

losses were not caused by long term seepage. (Doc. No. 25, PageID# 562.) Plaintiff maintains that he experienced "a sudden sewer backup" and that the backup was the cause of the damage. (*Id.*) To support his assertion that long term seepage was not the cause of the damage, he argues that (1) "[c]ausation is disputed and must be decided by a jury"; (2) "Debbie Millet lacks personal knowledge and offers improper conclusions"; (3) "Stanley Steemer is not a qualified causation expert."; and (4) he "was not required to submit an expert at this stage." (*Id.*)

The Court finds that Defendant has not demonstrated that either Paul Davis or Stanley Steemer (or more specifically any individual employed by Stanley Steemer that went to the Property at the request of Defendant) are experts that have offered expert opinions upon which the Court can rely.[12] Indeed, the Court finds that Defendant has not submitted competent evidence in the form of declarations or affidavits from Paul Davis or anyone from Stanley Steemer to demonstrate that they went to the Property, inspected it, took photographs that fairly and accurately depicted the parts of the Property and readings associated with the Property that were photographed and the conclusions they were able to reach as a result thereof. And those portions of the Declarations of Mr. Meredith and Ms. Millet that reiterate information included in the Paul Davis Report and Stanley Steemer Report are hearsay.

Accordingly, the Court declines to grant summary judgment to Defendant on Plaintiff's breach of contract claim based upon Defendant's assertion that the reported damage was a result of

---

[12] The Court is not saying that expert testimony is always necessary to demonstrate that a loss is or is not covered by the Policy. Indeed, the Sixth Circuit has held that the distinction between lay witness and expert witness testimony is "far from clear in cases where … a witness with specialized or technical knowledge was also personally involved in the factual underpinnings of the case.'" *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007). "[T]he fact that [a] lay witness, by virtue of his or her experience in a business has knowledge not possessed by the average person does not render the witness's opinion an expert opinion." *United States v. Whaley*, 860 F.Supp.2d 584, 594-95 (E.D. Tenn. 2012). "In other words, a layperson may offer opinion testimony that results from 'the particularized knowledge that the witness has by virtue of his or her position in the business.'" *W. Louisville Preservation Hall, LLC v. Secura Insurance Co.*, 2026 WL 2211559, at *6 (W.D. Ky. July 31, 2026) (quoting Fed. R. Evid. 701 advisory committee's note (2000)).

long-term seepage and therefore excluded under the Policy.

**2. The Policy Excludes Coverage Because Plaintiff Did Not Reside at the Property During the Relevant Coverage Period.**

Defendant argues that the Policy excludes coverage because Plaintiff did not reside at the Property during the relevant coverage period and Plaintiff has waived opposition to this argument because he failed to address it in the Opposition. (Doc. No. 23, PageID# 434; Doc. No. 27, PageID# 577.) The Policy excludes coverage where Plaintiff does not reside at the Property. The Policy identifies the Property as the "insured location," and "[i]nsured location" is synonymous with "***residence premises***." (Doc. No. 23-3, PageID# 445, 462.) The Policy defines the "***residence premises***" in pertinent part as:

> 4. the one, two, three or four family dwelling, used principally as a private residence;
> 5. other structures and grounds; or
> 6. that part of any other building;
>
> where you reside and which is shown in your Policy Declarations.

(*Id*., PageID# 463-64.) Courts have upheld similar language limiting coverage to "[t]he dwelling on the 'residence premises.'" *Spangler v. Wenninger*, 2008 WL 4218580, at *6 (S.D. Ohio Sept. 9, 2008) (granting summary judgment finding there was no coverage because the plaintiff was not living at the property). Thus, Plaintiff would need to reside on the Property to be entitled to coverage under the Policy.

Plaintiff has admitted that he did not live at the Property during the relevant coverage period. Plaintiff did not respond to Defendant's Requests for Admission. *See* (Doc. No. 23-11, PageID#s 553-54.) By failing to respond, Plaintiff has admitted, pursuant to Rule 36, that he did not reside at the Property during the relevant coverage period and that he rented out the Property to tenants while

he maintained a residence at 2234 E. 82nd Street. (*Id.*) Assuming *arguendo* that these admissions were insufficient, Defendant presents additional facts which demonstrate Plaintiff's non-residency.

Defendant finds additional support for Plaintiff's non-residency in the deposition transcript of Plaintiff's sister, Isabel Carter, and one of Plaintiff's filings in a state court eviction proceeding. In her deposition, Ms. Carter testified that Plaintiff had not lived at the Property since April 2022 when he moved into her home located at 2234 E. 82nd Street. (Carter Dep., p. 18.) Ms. Carter affirmed that Plaintiff rented the Property to tenants. (*Id.*, p. 18-19.) Public record offers further support for this fact. In an action brought in the Cuyahoga County Court of Common Pleas, Plaintiff sought to enjoin his sister from evicting him from the 2234 E. 82nd Street house and argued that an eviction would leave him "homeless." (Doc. No. 23-10, PageID# 544.) Plaintiff does not dispute these facts or offer any evidence that he lived at the Property during the relevant coverage period.

Furthermore, Defendant correctly asserts that Plaintiff waived opposition to this argument by failing to address it in his Opposition. (Doc. No. 27, PageID# 577.) It is well established that, if a party fails to respond or to otherwise oppose an argument raised in summary judgment briefing, a district court may deem that party to have waived opposition. *See, e.g.*, *Adkins v. Marathon Petroleum Co., LP*, 105 F.4th 841, 854 (6th Cir. 2024) ("[A]t the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments.") (citation omitted); *Weatherby v. Fed. Exp.*, 454 F. App'x 480, 490 (6th Cir. 2012) ("Though this court provides some leeway to *pro se* litigants, Plaintiff must still make some effort at argumentation or presentation of facts on appeal. Under circumstances such as these, where Plaintiff has made no effort to address her claim, the claim is waived."). Thus, Plaintiff has waived any opposition to Defendant's argument that Plaintiff is not entitled to coverage under the Policy for Claim 1 and Claim

2 because Plaintiff did not reside at the Property during the relevant coverage period. The Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's breach of contract claim.

**3. Count II: Bad Faith Insurance Practices**

Defendant argues that Plaintiff does not have a viable claim for bad faith because Defendant's handling of Plaintiff's insurance claims was justified. (Doc. No. 23, PageID# 436.) Defendant contends that it "fully investigated each of Plaintiff's claims and retained qualified experts to inspect every reported loss and provide professional opinions regarding their causes."[13] (*Id.*, PageID# 437.) This Court agrees with Defendant for the reasons set forth below.

"Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, syllabus paragraph one (Ohio 1983); *see also Scott Fetzer Co. v. American Home Assurance Co. Inc.*, 229 N.E.3d 70, 76 (Ohio 2023). "[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."[14] *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399-400 (Ohio 1994).

Under Ohio law, an insurer lacks reasonable justification for its denial when its refusal to pay

---

[13] The Court has already explained that Defendant has not qualified or even attempted to qualify Paul Davis or someone from Stanley Steemer as experts. However, the Court does note that Defendant did retain Paul Davis and Stanley Steemer to inspect the property, and reports were generated that were provided to and maintained in the ordinary course of business of Defendant, and relied upon in part by Defendant to evaluate coverage for Claim 1 and Claim 2.

[14] Intent is not an element of a bad faith tort. *Yates v. Allstate Ins. Co.*, 2012 WL 1902464, at *3 (S.D. Ohio May 25, 2012) (quoting *Zoppo v. Homestead Ins. Co.,* 644 N.E.2d 397 (Ohio 1994); *see also Superior Credit Union, Inc. v. CUMIS Ins. Soc'y, Inc.*, 2019 WL 5557343, at *5 (S.D. Ohio Oct. 28, 2019), *adopted by* 2019 WL 6131267 (S.D. Ohio Nov. 19, 2019). Rather, the applicable "standard for determining bad faith is simply 'reasonable justification'[.]" *Yates*, 2012 WL 1902464, at *3 (quoting *Zoppo*, 644 N.E.2d 397).

is predicated on an arbitrary and capricious belief that the insured is not entitled to coverage. *See Hoskins*, 452 N.E. 2d at 1320. Arbitrary and capricious decisions are those "made without consideration of or regard for facts, circumstances, fixed rules, or procedures." *Marshall v. Colonial Ins. Co*., 2016 WL 7290968, at * 8 (Ohio App. 7th Dist. Dec. 9, 2016); *see also Korwin v. State Farm Fire & Cas. Co.*, 2024 WL 3638655, at * 5 (N.D. Ohio Aug. 2, 2024) (same). An insurer may be reasonably justified in denying a claim when "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Big Lots Stores, Inc. v. Am. Guarantee & Liab. Ins. Co*., 240 F. Supp. 3d 725, 739 (S.D. Ohio 2017) (quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co*., 605 N.E.2d 936, 943 (Ohio 1992)); *see also Superior Credit Union, Inc. v. CUMIS Ins. Soc'y, Inc*., 2019 WL 5557343, at *5 (S.D. Ohio Oct. 28, 2019), *adopted by* 2019 WL 6131267, (S.D. Ohio Nov. 19, 2019).

"[P]erforming a cursory investigation and ignoring information that would tend to support the insured's claim can constitute bad faith." *Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 980 (S.D. Ohio 2009) (citing *Zoppo*, 644 N.E.2d at 400). The insurer "cannot merely conduct a cursory investigation and fail to interview key witnesses and look into key facts in order to prevent uncovering evidence that would support coverage." *Id.* at 981. A bad faith claim may be stated where the plaintiff alleges that the insurer "acted in bad faith by failing to investigate his claim, failing to apply provisions of [the] policy, and failing to interpret the policy in [the insured's] favor." *Superior Credit Union, Inc.*, 2019 WL 5557343, at *5 (quoting *Poneris v. Pennsylvania Life Ins. Co*., 2007 WL 3047232, at *3 (S.D. Ohio Oct. 18, 2007)). Even if a claim is ultimately paid, an insurer's "'foot-dragging' in handling and evaluating the claim may support a bad-faith cause of action." *McNair v. State Farm Fire & Cas. Co*., 2013 WL 6795616, at *5 (Ohio App. 6th Dist. Dec. 20, 2013) (quoting

*Drouard v. United Servs. Auto. Assn.*, 2007 WL 707532, at *2 (Ohio App. 6th Dist. Mar. 9, 2007)).

"On a motion for summary judgment, Ohio law directs courts to assess bad-faith-denial-of-coverage claims from the perspective of what information motivated the insurer's denial." *Smith v. Allstate Indem. Co.*, 304 F. App'x 430, 432 (6th Cir. 2008). "Viewing the evidence in the light most favorable to the insured, courts ask whether 'the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim.'" *Id.* (quoting *Tokles & Son, Inc.*, 605 N.E.2d at 943); *see also Retail Ventures, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 691 F.3d 821, 834 (6th Cir. 2012). "An aggrieved insured must respond to the insurer's motion 'with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification....'" *Id.*; *see also Trego v. Allstate Ins. Co.*, 552 F. App'x 449, 451 (6th Cir. 2014).

Plaintiff has failed to oppose Defendant's Motion "with evidence tending to show that [Defendant] lacked a reasonable justification or 'intentionally failed to determine whether there was any reasonable justification.'" *Smith v. Allstate Indem. Co.*, 304 F. App'x 430, 432 (6th Cir. 2008). After Plaintiff filed each of his claims, Defendant promptly dispatched a third-party investigator to inspect the Property, and these investigators produced reports that included photographs demonstrating to Defendant that Plaintiff's claim was excluded under the Policy. Defendant denied Claim 1 because coverage was excluded since Plaintiff did not reside at the Property and the loss was caused by long term seepage. *See* (Doc. No. 23-5, PageID#s 508-09.) Indeed, Defendant was aware that during his inspection of the Property, Paul Davis had discovered 20 square feet of mold. *See* (Doc. No. 23-4, PageID# 498.) Plaintiff does not deny that he did not reside at the Property, and he

has not offered any evidence that would support his assertion that a sudden sewer backup caused the damage.

As to Claim 2, Defendant retained Stanley Steemer to go to the Property and inspect it and take photographs and based upon the report that included photographs of the Property provided to Defendant, Defendant reasonably concluded that Claim 2 was the result of long-term seepage, deterioration and faulty maintenance. *See* (Doc. No. 23-6.) Plaintiff "merely disagrees with the investigator's conclusion without pointing to any unfounded basis for [Defendant's] conclusion or some investigative omission." *Smith*, 304 F. App'x at 433. Thus, this Court finds that Defendant's denial of Plaintiff's claims was reasonably justified and that Plaintiff has presented no evidence that would cast doubt on this conclusion. Therefore, the Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's bad faith insurance practices claim.

## IV. Conclusion

For the reasons contained herein, Defendant's Motion for Summary Judgment (Doc. No. 23), is granted, and the action is dismissed.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE

Date: September 1, 2026